# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-3327

_____

| | | |
|---|---|---|
| Arnold Frank Hohn, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Nebraska. |
| United States of America, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: June 14, 2001
Filed: August 22, 2001

_____

Before WOLLMAN, Chief Judge, MAGILL, and HAMILTON[*], Circuit Judges.

_____

MAGILL, Circuit Judge.

Arnold F. Hohn appeals the district court's denial of his 28 U.S.C. § 2255 motion to vacate, set aside, or correct his sentence for using or carrying a firearm during and in relation to a drug trafficking crime under 18 U.S.C. § 924(c)(1). We hold that we do not have jurisdiction to hear Hohn's appeal, and thus vacate the judgment and remand to the district court to dismiss the motion as moot.

_____

[*]The Honorable Clyde H. Hamilton, United States Circuit Judge for the Fourth Circuit, sitting by designation.

**I.**

In June 1990, police searched Hohn's home after an informant claimed that Hohn was selling methamphetamine. Police arrested Hohn, the only person present at the time of the search, in his living room. He neither was carrying a firearm on his person, nor did police find any weapons in the living room. On Hohn's kitchen counter, police discovered methamphetamine, three firearms, and two holsters. Police also found two firearms in a box in Hohn's kitchen. In Hohn's bedroom, police found more methamphetamine, as well as another firearm and holster nearby. In a second bedroom, police observed a wall-mounted gun case containing a collection of hunting rifles and shotguns.

In wake of the search of Hohn's home, the government charged Hohn with: (1) possession of methamphetamine with intent to distribute within 1000 feet of a school, in violation of 21 U.S.C. §§ 841(a) and 845a (recodified at 21 U.S.C. § 860); (2) being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g) and 924(a)(2); and (3) using or carrying a firearm during and in relation to a drug trafficking crime, in violation of § 924(c)(1).[1] At trial, Hohn testified in his own behalf, admitting possession of methamphetamine and firearms, but claiming that he owned the weapons because he is an avid hunter and because his home had been burglarized and vandalized repeatedly. No witness testified to seeing Hohn use or carry a firearm during and in relation to any drug activity.

At the close of the trial, the district court provided the jury with the following

---

[1] In 1998, Congress amended § 924(c)(1) to proscribe possession of a firearm in furtherance of a drug trafficking crime, in addition to proscribing using or carrying a firearm during and in relation to a drug trafficking crime. Act of Nov. 13, 1998, Pub.L. 105-386, § 1(a), 112 Stat. 3469; 18 U.S.C. § 924(c)(1) (2000). Hohn's appeal requires us to examine the pre-1998 statute.

instruction on the meaning of "use" and "carry" in § 924(c)(1):

> The phrase 'used a firearm' means having a firearm available to aid in the commission of possession of Methamphetamine with intent to distribute. Similarly, the phrase 'carried a firearm' does not require proof of actual possession of a firearm or use of it in any affirmative manner, but does require proof beyond a reasonable doubt that the firearm was available to provide protection in connection with the possession of Methamphetamine with intent to distribute or to facilitate success.

The court overruled Hohn's objection that the instruction "allows this jury to find that merely having a firearm available is sufficient" to convict under the "use" prong of § 924(c)(1).

The jury found Hohn guilty of all counts, and the district court sentenced him to ninety months imprisonment, with sixty months of the sentence issued for the § 924(c)(1) conviction. The court also imposed a six-year term of supervised release for the §§ 841(a) and 845a violation, and three-year terms of supervised release for the remaining two counts, both running concurrently to the six-year term.

Hohn's rather mundane criminal conviction has sparked a judicial odyssey that has lasted over a decade and has resulted in three prior opinions of this court and a trip to the United States Supreme Court. We turn now to sketch Mr. Hohn's long quest to reverse his § 924(c)(1) conviction.

On direct appeal, Hohn did not challenge his § 924(c)(1) conviction or the jury instructions related to that offense, probably because of this court's broad interpretation of the word "use" at the time of his appeal. See, e.g., United States v. LaGuardia, 774 F.2d 317, 321 (8th Cir. 1985) (holding that a firearm's "presence and availability in light of the evident need" demonstrate "use"). This court affirmed Hohn's convictions. United States v. Hohn, 8 F.3d 1301, 1307 (8th Cir. 1993).

Subsequently, the Supreme Court effectively abrogated this court's interpretation of the word "use" when it concluded that § 924(c)(1) requires "active employment of the firearm" for conviction under the "use" prong. Bailey v. United States, 516 U.S. 137, 144 (1995). Relying on Bailey, Hohn filed a pro se motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. Hohn argued that his conduct did not amount to a violation of § 924(c)(1), as interpreted by Bailey, and that the district court's jury instructions improperly defined the phrase "used a firearm." The district court denied his motion, concluding that Hohn waived his claim by failing to challenge his § 924(c)(1) conviction or the corresponding jury instructions on direct appeal. This court denied Hohn a certificate of appealability, concluding that his claim is statutorily based and thus fails to make "'a substantial showing of the denial of a constitutional right.'" Hohn v. United States, 99 F.3d 892, 892-93 (8th Cir. 1996) (quoting 28 U.S.C. § 2253(c)(2)), vacated, 524 U.S. 236 (1998). The Supreme Court granted certiorari to determine whether it has jurisdiction to review federal circuit court decisions denying applications for certificates of appealability. 524 U.S. at 238-39. Answering this question affirmatively, the Court vacated our denial of a certificate of appealability because the government conceded that Hohn's claim is constitutional in nature, and remanded to this court for further consideration. Id. at 253.

On remand, this court held Hohn actually innocent of "using" a firearm under § 924(c)(1). Hohn v. United States, 193 F.3d 921, 924 (8th Cir. 1999). However, noting that the jury also convicted Hohn under the "carry" prong, we remanded to the district court "to engage in the fact-bound analysis of whether Hohn is factually innocent of carrying a firearm during or in relation to a drug trafficking offense, in order to open the gateway for the consideration of his defaulted Bailey claim." Id.

The district court ordered supplemental briefing on whether Hohn is factually innocent of violating § 924(c)(1) under the "carry" prong. The court held that Hohn did not establish actual innocence of "carrying" a firearm under § 924(c)(1), reasoning

that

> the guns being open and obvious on the kitchen counter with such things as spare change next to holsters in which to carry them would indicate that they were carried. The evidence along with the drugs being found in the Defendant's home and on his person, could allow a reasonable juror to find that the Defendant carried the firearm in relation to a drug trafficking crime. In addition, this Court notes that an informant stated that the Defendant regularly carried a firearm.

The district court issued Hohn a certificate of appealability, and this appeal ensued. Hohn was released from prison in October 1997 and currently is serving his six-year term of supervised release. It is with this procedural scenario in mind that we hope finally to bring Mr. Hohn's odyssey to a conclusion.

## II.

Before reaching the merits, we must determine whether we have jurisdiction to entertain Hohn's appeal notwithstanding his release from prison. See Arizonans for Official English v. Arizona, 520 U.S. 43, 73 (1997) ("[E]very federal appellate court has a special obligation to satisfy itself . . . of its own jurisdiction . . . .") (internal quotations and citations omitted). This is the case even though the government concedes that we have jurisdiction. See Thomas v. Basham, 931 F.2d 521, 523 (8th Cir. 1991). Although both this court and the Supreme Court have entertained Hohn's appeals since he was released from prison, neither court examined whether it had jurisdiction to reach the merits of the appeal. Hohn, 524 U.S. 236; Hohn, 193 F.3d 921. The Supreme Court has cautioned that "drive-by jurisdictional rulings of this sort . . . have no precedential effect." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 91 (1998).

Under Article III, § 2 of the United States Constitution, "'the exercise of judicial

power depends upon the existence of a case or controversy.'" DeFunis v. Odegaard, 416 U.S. 312, 316 (1974) (citation omitted). Regardless of whether an Article III, § 2 case existed in prior proceedings, Hohn must show the subsistence of a case or controversy in this court. See Lewis v. Continental Bank Corp., 494 U.S. 472, 477-78 (1990). Specifically, Hohn must show that his appeal is not moot despite his release from prison. Put another way, Hohn must show that the standing he had when he filed his § 2255 motion continues to exist now. See United States Parole Comm'n v. Geraghty, 445 U.S. 388, 397 (1980) (explaining that "mootness [is] 'the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).'") (quoting Henry Monaghan, Constitutional Adjudication: The Who and When, 82 Yale L.J. 1363, 1384 (1973)) . Thus, Hohn must show that he has suffered, or is threatened with, an actual injury traceable to the government that is likely to be redressed by a favorable decision. See Lewis, 494 U.S. at 477.

We hold that we do not have jurisdiction to entertain Hohn's appeal under the general mootness inquiry. Hohn is no longer imprisoned. Hohn's three-year term of supervised release for his § 924(c)(1) conviction runs concurrent to the six-year term of supervised release stemming from his conviction under §§ 841(a) and 845a. Thus, even if we were to hold Hohn's § 924(c)(1) conviction unconstitutional, such a holding would not affect Hohn's term of supervised release.[2] Therefore, Hohn's case is moot under the general mootness inquiry because a favorable decision could not redress any

---

[2]It is arguable that we should count Hohn's three-year term of supervised release resulting from his § 924(c)(1) conviction as beginning when he was released from prison in October 1997. If true, then this appeal comes in a different procedural posture from the 1998 and 1999 opinions issued by this court and the Supreme Court. Since this court's 1999 decision, Hohn has completed over three years of supervised release. Thus, it cannot be said that Hohn currently is serving a term of supervised release resulting from his § 924(c)(1) conviction.

injury caused by a purportedly unconstitutional conviction under § 924(c)(1).[3]

Our holding today compels us to revisit our decision in Sesler v. Pitzer, 110 F.3d 569 (8th Cir. 1997). In Sesler, the defendant pleaded guilty to violating § 924(c)(1), and the district court sentenced him to sixty months of imprisonment followed by three years of supervised release. Id. at 570. Subsequently, Congress enacted a statute permitting the Bureau of Prisons (the "Bureau") to reduce the sentence of a prisoner who had committed a nonviolent offense by up to one year if the prisoner successfully completed a substance abuse treatment program. 18 U.S.C. § 3621(e)(2)(B). Since he already had completed a drug abuse program, the defendant in Sesler petitioned the Bureau to reduce his sentence. 110 F.3d at 570. The Bureau denied the defendant's petition, concluding that he was ineligible for a sentence reduction under § 3621(e)(2)(B) because he had been convicted of a violent offense. Id. The defendant then filed a habeas petition, which the district court denied. Id. After the defendant

---

[3]Actually, Hohn's pro se § 2255 motion seeks to vacate, set aside, or correct his *sentence*. When a convict challenges his sentence, rather than the underlying conviction, the completion of the sentence renders the convict's motion moot. Lane v. Williams, 455 U.S. 624, 631 (1982). We interpret pro se habeas filings liberally. Papantony v. Hedrick, 215 F.3d 863, 865 (8th Cir. 2000). Although entitled "Federal Custody; remedies on motion attacking sentence," § 2255 is available to attack convictions as well. Richard H. Fallon, Jr. et al., Hart & Wechsler's The Federal Courts & The Federal System 1461 (4th ed. 1996); United States v. Angelos, 763 F.2d 859, 860 (7th Cir. 1985) (Posner, J.) (holding that "if the defendant can show that under no possible view of his conduct was he guilty of a federal crime, the conviction will be set aside as 'otherwise subject to collateral attack' under 28 U.S.C. § 2255") (citing Davis v. United States, 417 U.S. 333, 345-46 (1974)). We think that by presenting a Bailey challenge, Hohn necessarily attacks his § 924(c)(1) conviction as well as his sentence. Cf. Port v. Heard, 764 F.2d 423, 427-28 (5th Cir. 1985). Moreover, given Hohn's explicit requests, in both his appellate briefs and his response to the government's answer to his § 2255 motion, that this court reverse or vacate his conviction, we interpret Hohn's § 2255 motion to encompass a challenge to his § 924(c)(1) conviction.

filed his appeal of the district court's decision, he was released from prison and had begun serving his term of supervised release. Id. at 571.

This court held that the defendant's appeal presented a live case or controversy because, if the Bureau had reduced his sentence by one year, then the defendant's term of supervised release would have begun one year earlier. Id. Therefore, we reasoned, if the defendant was successful on the merits of his appeal, then his sentence could be reduced by one year. Id. But see United States v. Douglas, 88 F.3d 533, 534 (8th Cir. 1996) (per curiam) (holding that courts may not credit prison time served in excess of a defendant's revised sentence against the defendant's term of supervised release).

Under Sesler, if we vacated Hohn's § 924(c)(1) conviction, we would be able to reduce his term of supervised release by sixty months to account for the excess amount of time he spent in prison for the § 924(c)(1) conviction. However, since Sesler, the Supreme Court held in United States v. Johnson, 529 U.S. 53 (2000), that a court may not reduce a prisoner's term of supervised release to reflect an excess amount of time in prison. Id. at 60. Thus, Sesler and Johnson are in conflict. See Crawford v. Booker, No. 99-3121, 2000 WL 1179782, at *1-2 (10th Cir. Aug. 21, 2000). A panel of this court ordinarily cannot overrule a prior panel opinion, but this rule does not apply when a decision of the Supreme Court casts doubt upon the prior panel opinion. Patterson v. Tenet Healthcare, Inc., 113 F.3d 832, 838 (8th Cir. 1997). The Supreme Court's opinion in Johnson compels us to overrule Sesler. Under Johnson, we could not reduce Hohn's term of supervised release if we held his § 924(c)(1) conviction unconstitutional. Therefore, Hohn's case is moot under the general mootness inquiry because we are incapable of redressing his asserted injury.

Since Hohn is unable to show that his appeal presents a live case or controversy under the general mootness inquiry, he must show that an exception to the mootness doctrine applies to render his appeal justiciable. Even when a litigant is unable to meet the requirements of the general mootness inquiry, the litigant may invoke an exception

to the mootness doctrine to gain judicial review. There are four exceptions to the mootness doctrine, so that a court will not dismiss a case as moot if: (1) secondary or "collateral" injuries survive after resolution of the primary injury; (2) the issue is deemed a wrong capable of repetition yet evading review; (3) the defendant voluntarily ceases an allegedly illegal practice but is free to resume it at any time; or (4) it is a properly certified class action suit. Erwin Chemerinsky, Federal Jurisdiction § 2.5.1, at 128 (3d ed. 1999); Artway v. Attorney General of N.J., 81 F.3d 1235, 1246 n.6 (3d Cir. 1996). In this case, the government argues that sufficient collateral consequences flow from Hohn's conviction so that even though he already has been released from prison, we may entertain his appeal. Specifically, the government states: "A collateral consequence of Hohn's Section 924(c) conviction is an enhancement under Section 924(c) should Hohn in the future be convicted of a second or subsequent violation."[4]

The Supreme Court has explained that "[a]n incarcerated convict's (or a parolee's) challenge to the validity of his conviction always satisfies the case-or-controversy requirement, because the incarceration (or the restriction imposed by the terms of the parole) constitutes a concrete injury, caused by the conviction and redressable by invalidation of the conviction." Spencer v. Kemna, 523 U.S. 1, 7 (1998). However, after the convict's sentence expires, "some concrete and continuing injury other than the now-ended incarceration or parole--some 'collateral consequence' of the conviction--must exist if the suit is to be maintained." Id.

---

[4]The Supreme Court refers to collateral consequences as an exception to the mootness doctrine. However, one commentator has noted that a case that fits within the collateral consequences exception is not moot under the general mootness inquiry "because some injury remains that could be redressed by a favorable federal court decision." Chemerinsky, supra, § 2.5.2, at 130. We thus think that our holding that Hohn's appeal is moot under the general mootness inquiry renders unnecessary an examination of whether his conviction creates sufficient collateral consequences to make his appeal justiciable. Nevertheless, we proceed to examine Hohn's appeal under the collateral consequences exception to the mootness doctrine.

In Spencer, the Court held that insufficient collateral consequences resulted from the petitioner's parole revocation to avoid mootness. Id. at 14-17. In so holding, the Court criticized precedent that presumed the existence of collateral consequences and that accepted "the most generalized and hypothetical of consequences as sufficient to avoid mootness." Id. at 9-10 (citing Pollard v. United States, 352 U.S. 354 (1957), as "[t]he gateway to abandonment of [the previously] fastidious approach to collateral consequences"). Nevertheless, the Spencer Court did not overrule Pollard and its progeny, instead noting that although a court may presume collateral consequences in the context of a criminal conviction, the same cannot be said of parole revocation. 523 U.S. at 12.

Thus, we begin our analysis by presuming that Hohn's § 924(c)(1) conviction creates sufficient collateral consequences to render his appeal justiciable. However, a presumption is just that - it does not end our analysis. Moreover, we begin our analysis cognizant of the Spencer Court's distinct distaste for finding collateral consequences without a showing of a concrete statutory disability stemming from the challenged conviction. We thus agree with then-Chief Judge Posner's observation that Spencer

> tries to bring the law of habeas corpus into conformity with a general 'hardening' of standing requirements in recent years. A basic principle of standing is that a person is not entitled to litigate in a federal court unless he can show a reasonable probability of obtaining a tangible benefit from winning. Certainty is not required but a remote possibility won't do.

Diaz v. Duckworth, 143 F.3d 345, 347 (7th Cir. 1998) (citations omitted).

The government contends that the possibility that a court could use Hohn's § 924(c)(1) conviction to enhance his sentence should a court convict Hohn of another crime in the future is a sufficient collateral consequence to render his appeal justiciable.

-10-

We disagree. In <u>Spencer</u>, the habeas petitioner noted that a court could use the revocation of his parole to increase his sentence in a future sentencing proceeding. 523 U.S. at 15. The Court rejected this proposed collateral consequence, stating that "it was contingent upon respondents' violating the law, being caught and convicted. 'Respondents themselves are able--and indeed required by law--to prevent such a possibility from occurring.'" <u>Id.</u> (quoting <u>Lane v. Williams</u>, 455 U.S. 624, 632 n.13 (1982)). Similarly, the government's proposed collateral consequence in this case is contingent upon Hohn committing another crime, something that is within his power to prevent from occurring.

Nor can we identify any concrete statutory collateral consequence stemming from Hohn's § 924(c)(1) conviction that we could redress by vacating the conviction. In addition to his § 924(c)(1) conviction, the jury found Hohn guilty of possessing methamphetamine with intent to distribute within 1000 feet of a public school and being a felon in possession of a firearm. Moreover, prior to this case, Hohn was convicted of malicious destruction of property, for which he served one year of imprisonment. These other convictions independently cause Hohn the kinds of concrete disadvantages or disabilities that the Supreme Court has found constitute sufficiently adverse collateral consequences to render a case justiciable, "such as deprivation of the right to vote, to hold office, to serve on a jury, or to engage in certain businesses." <u>Spencer</u>, 523 U.S. at 8 (citing <u>Carafas v. LaVallee</u>, 391 U.S. 234, 237 (1968) (finding sufficient collateral consequences when the conviction left the petitioner unable to engage in certain businesses, serve as a labor union official, vote in New York state elections, or serve as a juror); <u>Ginsberg v. New York</u>, 390 U.S. 629, 633 n.2 (1968) (finding sufficient collateral consequences when the conviction rendered the petitioner liable to revocation of his license to operate a luncheonette business); <u>United States v. Morgan</u>, 346 U.S. 502, 503-04, 512-13 (1954) (finding sufficient collateral consequences when the conviction had been used to increase the petitioner's current sentence under a state recidivist law); <u>Fiswick v. United States</u>, 329 U.S. 211, 221-23 (1946) (finding sufficient collateral consequences when the conviction rendered the petitioner liable to

deportation and denial of naturalization, and ineligible to serve on a jury, vote, or hold office)).

We acknowledge that <u>Spencer</u>, although strongly critical of <u>Pollard</u> and its progeny, did not overrule this line of cases. 523 U.S. at 8-14. However, the <u>Pollard</u> line of cases did not examine whether the convictions at issue produced collateral consequences independent from any other convictions in the petitioners' records. We thus are hesitant to infer from this line of cases that, in conducting our collateral consequences analysis, we should examine only Hohn's § 924(c)(1) conviction without regard to his other convictions. <u>Cf.</u> <u>Steel Co.</u>, 523 U.S. at 91 (cautioning that "drive-by jurisdictional rulings . . . have no precedential effect").

Moreover, <u>Spencer</u> cited with approval Justice Harlan's concurrence in <u>Parker v. Ellis</u>, 362 U.S. 574 (1960) (per curiam), <u>overruled by</u> <u>Carafas</u>, 391 U.S. 234. In <u>Parker</u>, Justice Harlan concluded that the petitioner's habeas filing was moot because he had numerous prior convictions, so that even if the Court held in the petitioner's favor on his current challenge, such a holding would not prevent any adverse consequence stemming from the petitioner's other convictions. <u>Id.</u> at 576 (Harlan, J., concurring). Justice Harlan's reasoning is equally applicable to the case here.

Even if we were to hold that Hohn is actually innocent of violating § 924(c)(1), the collateral consequences attendant to Hohn's other convictions would stand. We simply cannot think of any concrete statutory collateral consequence stemming from Hohn's § 924(c)(1) conviction that, given Hohn's numerous convictions, we would erase by vacating the § 924(c)(1) conviction. We conclude that our inability to redress the purported constitutional infirmity in Hohn's § 924(c)(1) conviction overcomes the presumption in favor of finding collateral consequences resulting from a criminal conviction. <u>See</u> <u>Parker</u>, 362 U.S. at 576 (Harlan, J., concurring). Therefore, Hohn's appeal is moot, and we do not have jurisdiction to address his contention that his § 924(c)(1) conviction is unconstitutional. <u>See</u> <u>Lowry v. McDonnell Douglas Corp.</u>, 211

-12-

F.3d 457, 464 (8th Cir.), <u>cert. denied</u>, 121 S. Ct. 309 (2000) (holding that the lack of jurisdiction prevented addressing the merits of the appeal since such a discussion "could only be an advisory opinion").

### III.

Since we do not have jurisdiction to hear Hohn's appeal, we VACATE the judgment and REMAND to the district court to dismiss the motion as moot.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.