In the

# United States Court of Appeals
### For the Seventh Circuit

No. 01-3795

DAVID A. MORLAN,

*Plaintiff-Appellant,*

v.

UNIVERSAL GUARANTY LIFE INSURANCE COMPANY, *et al.,*

*Defendants-Appellees.*

Appeal from the United States District Court
for the Southern District of Illinois.
No. 99 C 274—**G. Patrick Murphy,** *Chief Judge.*

ARGUED MAY 28, 2002—DECIDED JULY 26, 2002

Before BAUER, POSNER, and WILLIAMS, *Circuit Judges.*

POSNER, *Circuit Judge.* This appeal from the dismissal of a class action presents novel issues at the intersection of bankruptcy and class action law. A procedural chronology will help in framing them.

*April 1999.* David Morlan files this class action suit as the representative of a class of insurance agents of the defendants, affiliated insurance companies that maintain employee welfare benefit plans. 29 U.S.C. § 1002(1). Morlan's suit charges that the defendants, in breach of the fiduciary duty that ERISA imposes on fiduciaries of pension and welfare plans, see 29 U.S.C. § 1109(a), improp-

erly treated him and the other members of the class as independent contractors, when actually they were employees of the defendants and so were entitled to the health, vacation, and other benefits to which the defendants' plans entitled the defendants' acknowledged employees.

*May 1999.* Morlan files for bankruptcy.

*September 1999.* The bankruptcy court (1) orders Morlan's debts discharged, on the basis of the trustee's report that the estate in bankruptcy has no assets and that consequently the trustee has made no distribution to the creditors, and (2) dismisses the bankruptcy proceeding.

*January 2000.* Morlan files an amended complaint in the class action suit.

*August 2000.* The suit is certified by the district court as a class action with Morlan the only named plaintiff.

*September 2001.* Having learned about the bankruptcy, the district judge decertifies the class in Morlan's ERISA suit and dismisses the suit without prejudice. Morlan's claim under ERISA, the judge reasons, became an asset of the estate in bankruptcy and was not abandoned by the trustee. So when the class was certified, the named plaintiff (Morlan) had no standing to sue because he did not own the claim that he was suing upon.

Morlan asks us to reverse the dismissal of his suit.

The dismissal presupposes the assignability of Morlan's ERISA claim to the trustee in bankruptcy; if it was assignable and assigned, it became property of the estate in bankruptcy, as in *In re Polis,* 217 F.3d 899, 901 (7th Cir. 2000); if it was not assignable, Morlan rather than the trustee was entitled to sue to enforce it.

ERISA requires pension plans to include a provision forbidding the assignment or alienation (these are synonyms,

*Riordan v. Commonwealth Edison Co.*, 128 F.3d 549, 552 (7th Cir. 1997), except that the addition of "alienation" to "assignment" makes crystal clear that the anti-assignment provision bars involuntary as well as voluntary assignments) of pension-plan benefits, 29 U.S.C. § 1056(d)(1); *Plumb v. Fluid Pump Service, Inc.*, 124 F.3d 849, 863 (7th Cir. 1997), and thus keeps such property out of the plan participant or beneficiary's estate in bankruptcy. 11 U.S.C. § 541(c)(2); *Patterson v. Shumate*, 504 U.S. 753, 760 (1992); *In re Weinhoeft*, 275 F.3d 604, 605 (7th Cir. 2001). Some types of claim are nonassignable voluntarily but assignable involuntarily, as in *In re Polis, supra*, 217 F.3d at 901. Tort claims, for example, normally are not assignable, but they do become property of the claimant's estate in bankruptcy by operation of bankruptcy law. ERISA's anti-assignment clause, however, as the *Patterson* and *Weinhoeft* cases make clear, bars the latter type of assignment as well.

ERISA imposes no similar requirement on welfare plans; nor do the plans at issue in this case contain a clause forbidding assignment or alienation. Since, however, Morlan's claim is in part a claim for pension benefits, in part it is indeed nonassignable; and so the dismissal of his suit was improper. But it will make a difference on remand whether he can sue on all or only the pension part of his claim; and so we proceed to a consideration of whether the part of his claim that concerns welfare benefits was assignable.

Several cases hold that welfare benefits are generally nonassignable, just as pension benefits are, despite the absence of a counterpart to section 1056(d)(1) applicable to welfare benefits. These cases reason that because ERISA authorizes suits for plan benefits only by participants, beneficiaries, fiduciaries, or the Secretary of Labor, 29 U.S.C. § 1132(a), an assignee who does not come under one

of these descriptions is ineligible to maintain the suit. See, e.g., *Simon v. Value Behavioral Health, Inc.*, 208 F.3d 1073, 1080-82 (9th Cir. 2000).

The cases, it is true, carve an exception for medical benefits assigned to a health-care provider in exchange for health care, a common method of financing such care. See, e.g., *Principal Mutual Life Ins. Co. v. Charter Barclay Hospital, Inc.*, 81 F.3d 53, 55-56 (7th Cir. 1996). That would not support a conclusion that Morlan's ERISA claim for welfare benefits was assignable to the trustee in bankruptcy, however, because the trustee is not a health-care provider. Our court has a case of that sort, but our opinion in that case takes no position on whether other types of welfare benefit are assignable and if so whether there is any restriction on who the assignees may be. *Plumb v. Fluid Pump Service, Inc., supra*, 124 F.3d at 863 and n. 15. However, in *Kennedy v. Connecticut General Life Ins. Co.*, 924 F.2d 698, 700 (7th Cir. 1991), we rejected the reasoning later adopted in cases like *Simon* by holding that a properly assigned ERISA claim makes the assignee a participant or beneficiary within the meaning of the Act.

Only the Fifth Circuit has actually held that claims for such benefits are assignable without restrictions. The principal case is *Hermann Hospital v. MEBA Medical & Benefits Plan*, 845 F.2d 1286, 1289 (5th Cir. 1988), which, though it too concerned health benefits, based its holding that they are assignable on the absence of a statutory provision forbidding their assignment, a ground independent of the nature of the welfare benefits or whom they are assigned to. Another Fifth Circuit decision, *Texas Life, Accident, Health & Hospital Service Ins. Guaranty Ass'n v. Gaylord Entertainment Co.*, 105 F.3d 210, 214-15 (5th Cir. 1997), holds that claims for welfare benefits are assignable regardless of their nature, though the ground of the decision (a ground equally

applicable to pension plans, by the way—and *Texas Life* involved a pension plan, not a welfare plan) is one we have difficulty understanding. It is that benefits, and a claim that benefits were withheld in breach of the plan administrator's fiduciary obligations, are different animals, so that the statutory anti-assignment provision is interpretable as forbidding assignment of benefits but not of benefit claims that have matured into causes of action.

Now that we must decide the issue, we hold that claims for welfare benefits, not limited to health-care benefits, are assignable, provided of course that the ERISA plan itself permits assignment, assignability being a matter of freedom of contract in the absence of a statutory bar. *Kennedy v. Connecticut General Life Insurance Co.*, *supra*, 924 F.2d at 700. The absence of a counterpart to the anti-assignment provision for pension plans is telling; and in this regard we do not understand how the courts that have held welfare benefits nonassignable square their conclusion with the Supreme Court's decision in *Mackey v. Lanier Collection Agency & Service, Inc.*, 486 U.S. 825, 837-38 (1988), which held that, precisely because there is no anti-assignment provision for welfare plans, ERISA does not prohibit a state from garnishing benefits payments due plan participants. See *In re Taft*, 184 B.R. 189, 191 (E.D.N.Y. 1995). Garnishment and an assignment for the benefit of creditors are the same kind of animal.

Pertinent too is the general principle of the law that contractual claims (which is the essential character of claims to benefits pursuant to private pension or welfare plans) for the payment of money are assignable. *In re New Era, Inc.*, 135 F.3d 1206, 1210 (7th Cir. 1998); *Citibank, N.A. v. Tele/Resources, Inc*, 724 F.2d 266, 268 (2d Cir. 1983); *Collins Co. v. Carboline Co.*, 532 N.E.2d 834, 841 (Ill. 1988); E. Allan Farnsworth, *Contracts* § 11.2, p. 707 (3d ed. 1999). This principle, however, comes with an important exception,

which turns out to be pertinent to this case, for cases in which "the personal acts and qualities of one of the parties form a material part of the contract." *First Illinois National Bank v. Knapp*, 615 N.E.2d 75, 77-78 (Ill. App. 1993). If you made a contract with John Singer Sargent for him to paint your portrait, he could not assign his contractual duty to another painter without your consent. Nor could you assign your automobile liability insurance policy to another driver, since he might be in a different risk class from you. And likewise Morlan could not assign to the trustee in bankruptcy his right to participate in his employer's welfare benefits plans, thus substituting the trustee, or the creditors, for himself—that would be nonsensical.

Insofar as Morlan is seeking past monetized or monetizable benefits, this problem does not arise, because such a claim is independent of all personal differences between Morlan on the one hand and the trustee or creditors on the other, and so it is assignable. But he is claiming both past and future benefits, and, consistent with the "personal obligations" doctrine, the future benefits are not assignable—so here is another piece of his claim that, like his claim for pension benefits, clearly remained with him despite the bankruptcy. Still, the conclusion from the analysis thus far is that the trustee could take over at least a chunk, for all we know the biggest chunk, of Morlan's claim as an asset of the bankrupt estate, and this conclusion requires us to consider whether that chunk was revested in Morlan, enabling him to sue to enforce it in his class action suit. If it was not revested, if it was not his property, he did not have standing to sue for it. For if it was not his property he would not benefit from an order requiring the defendants in the class action suit to render up the property.

After a suit is certified as a class action, a loss of standing by the named plaintiff does not destroy or (if it affects just

one of several claims) curtail the federal court's jurisdiction; he can be replaced by a member of the class who has standing. *Parole Commission v. Geraghty*, 445 U.S. 388, 398 (1980). But until certification, the jurisdiction of the district court depends upon its having jurisdiction over the claim of the named plaintiffs when the suit is filed and continuously thereafter until certification, *Walters v. Edgar*, 163 F.3d 430, 432 (7th Cir. 1998); *Nelson v. Murphy*, 44 F.3d 497, 500 (7th Cir. 1995); *Lusardi v. Xerox Corp.*, 975 F.2d 964, 974-75 (3d Cir. 1992), because until certification there is no class action but merely the prospect of one; the only action is the suit by the named plaintiffs. Morlan declared bankruptcy in May 1999, before the class was certified. Upon that declaration he lost the chunk of his ERISA claim that we're concerned with in this part of the opinion; it fell into the estate in bankruptcy. But in September the bankruptcy proceeding was dismissed, and there is an argument, as we're about to see, that the effect of that dismissal was to revest Morlan with his entire claim.

That might seem too late to save Morlan's standing to sue on the entire claim were it not for his having filed an amended complaint in January 2000. That filing cured any problem. Quite apart from the relation-back doctrine of Fed. R. Civ. P. 15(c), which allows even jurisdictional defects in the original complaint to be cured provided the amended complaint relates back, as this one did, e.g., *E.R. Squibb & Sons, Inc. v. Lloyd's & Cos.*, 241 F.3d 154, 163 (2d Cir. 2001) (per curiam); *Black v. Secretary of Health & Human Services*, 93 F.3d 781, 790 (Fed. Cir. 1996); *Flores v. Cameron County*, 92 F.3d 258, 272-73 (5th Cir. 1996), the filing of the amended complaint was the equivalent of filing a new suit, and so it wouldn't matter had there been no jurisdiction over Morlan's original suit, *Illinois ex rel. Barra v. Archer Daniels Midland Co.*, 704 F.2d 935, 939 (7th Cir. 1983); *Sun Refining & Marketing Co. v. Rago*, 741 F.2d 670,

672 (2d Cir. 1984); see also *Carver v. Condie*, 169 F.3d 469, 472 (7th Cir. 1999); *Duda v. Board of Education*, 133 F.3d 1054, 1057 (7th Cir. 1998); *Wellness Community-National v. Wellness House*, 70 F.3d 46, 49 (7th Cir. 1995); *Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992), unless one wanted to make a fuss over the filing fee. The only significance of relation back is avoidance of the bar of the statute of limitations, *Flores v. Cameron County, supra*, 92 F.3d at 272-73, and that is not an issue here.

Clearly, then, if the assignable part of Morlan's ERISA claim, having been transferred to the estate in bankruptcy by operation of law when Morlan filed for bankruptcy, was abandoned before the amended complaint was filed, he could sue to enforce it, because the effect of a trustee's abandoning a claim is to revest the ownership of it in the debtor. E.g., *Koch Refining v. Farmers Union Central Exchange, Inc.*, 831 F.2d 1339, 1346 n. 9 (7th Cir. 1987); *Catalano v. Commissioner*, 279 F.3d 682, 685 (9th Cir. 2002); *In re Interpictures Inc.*, 217 F.3d 74, 76 (2d Cir. 2000) (per curiam). And actually, despite the attention we've been paying to getting the sequence right, the sequence doesn't matter; for when property of the bankrupt is abandoned, the title "reverts to the bankrupt, nunc pro tunc, so that he is treated as having owned it continuously." *Wallace v. Lawrence Warehouse Co.*, 338 F.2d 392, 394 n. 1 (9th Cir. 1964); see also *Sessions v. Romadka*, 145 U.S. 29, 51-52 (1892); *Catalano v. Commissioner, supra*, 279 F.3d at 685; *In re Dewsnup*, 908 F.2d 588, 590 (10th Cir. 1990) (per curiam). The purposes of retroactive vesting include to protect against the running of the statute of limitations, *Sessions v. Romadka, supra*, 145 U.S. at 52, and to compensate the trustee for any cost he may have incurred in maintaining the property during his custody of it. *Brown v. O'Keefe*, 300 U.S. 598, 602-03 (1937) (Cardozo, J.).

In arguing that the trustee abandoned Morlan's claim, Morlan points to four things: the tape recording of a creditors' meeting at which he stated under oath in response to a question from the trustee about his assets: "I think I might be involved in a class action lawsuit involving an insurance company I used to work for"; a letter from the trustee to Morlan's lawyer stating that the trustee had decided to "abandon any claim the bankruptcy estate might have to any future proceeds arising from that lawsuit"; the "trustee's report of no distribution and statement of abandonment of property," submitted to the bankruptcy court; and the bankruptcy judge's order approving "the Trustee's statement of abandonment and report of no distribution," discharging the trustee, and closing the "no asset" case.

No doubt the trustee wanted and intended to abandon Morlan's claim. But the defendants argue, and the district court agreed, that the trustee's attempt to abandon failed because the trustee failed to comply with the statutory requirements for abandoning an asset that is part of the debtor's estate. The requirements are exacting, in recognition of the potential harm to creditors from the trustee's abandoning property to which they would otherwise be entitled because it is property of the estate in bankruptcy, and of the fact that "abandonment is revocable only in very limited circumstances, such as 'where the trustee is given incomplete or false information of the asset by the debtor, thereby foregoing a proper investigation of the asset.'" *Catalano v. Commissioner, supra*, 279 F.3d at 686.

So let us consider the requirements for effective abandonment. The Bankruptcy Code provides that "after notice and a hearing," the trustee, either on his own volition or under order by the bankruptcy court, "may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate."

11 U.S.C. § 554(a). In addition, property that the bankruptcy court orders the trustee to abandon is deemed abandoned, § 554(b), and likewise property that has been scheduled, § 521(1), but "not otherwise administered at the time of the closing of a case." § 554(c). Property not abandoned under one of these three subsections remains property of the debtor's estate—"unless the court orders otherwise." § 554(d).

Section 521(1), to which subsection 554(c) refers, requires the debtor to file (so far as bears on this case) a schedule of his assets. Morlan did so, but he did not list his ERISA claim on the schedule, and so abandonment was not authorized by section 554(c). As for section 554(a), the trustee did not notify the creditors that he was considering abandoning Morlan's claim, or conduct a hearing on the matter. Of course, if after notice the creditors don't want a hearing, the failure to conduct one would not nullify the abandonment. A requirement of "notice and a hearing" really means notice and *the opportunity for* a hearing. In fact the Bankruptcy Code is explicit in defining "after notice and a hearing" as "authorizing an act without an actual hearing if such notice is given properly" *and* no interested party requests a hearing. 11 U.S.C. § 102(1)(B). See *In re Trim-X, Inc.*, 695 F.2d 296, 300 (7th Cir. 1982). But there was no notice here and so section 554(a) isn't available either. Nor is (b)—the bankruptcy judge did not order the trustee to abandon anything.

As for subsection (d), the bankruptcy judge's order closing the case as a no-asset, no-distribution bankruptcy in part on the basis of a "statement of abandonment" might seem interpretable as the "order[ing] otherwise" to which the subsection refers. But no, because the statement of abandonment that the trustee submitted to the bankruptcy court and that the court in effect incorporated by reference

in its order says only that "any *scheduled* property is abandoned" (emphasis added), and Morlan's ERISA claim was not scheduled.

We conclude that the abandonment of the assignable and thus assigned part of Morlan's claim by the trustee was not in compliance with section 554 and was therefore ineffective. But this does not end the case. We must decide what the consequences of noncompliance were and specifically whether they included dismissal of the class action. Clearly not dismissal in its entirety, since part of Morlan's claim was nonassignable; but dismissal of the assignable part of the claim. In addressing this question we begin by noting that it was virtually inevitable that the trustee would abandon the claim, precisely because it was the claim of the representative plaintiff in a class action suit, albeit a suit not yet certified for class action treatment. What trustee in bankruptcy would think it worthwhile to insert himself in the place of the named plaintiff? We are not surprised to find very few cases in which trustees in bankruptcy have done so. Compare *In re Polis, supra*, 217 F.3d at 903-04. The named plaintiff in a class action usually has only a small stake in the action, *Culver v. City of Milwaukee*, 277 F.3d 908, 910, 913 (7th Cir. 2002); *White v. Sundstrand Corp.*, 256 F.3d 580, 586 (7th Cir. 2001), and while the stakes for the class as a whole may be large, very few of the benefits of settling the class action or prosecuting it to judgment would be received by the trustee (which is to say the creditors), since he would just be the named plaintiff's surrogate. Most of the benefits would go to the other members of the class and to the lawyers for the class, so that the trustee, as class representative yet having fiduciary obligations exclusively to the estate in bankruptcy, would have a potential conflict of interest, as noted in the only cases we've found in which a trustee in bankruptcy did attempt to prosecute a class claim. *Maddox & Starbuck*,

*Ltd. v. British Airways*, 97 F.R.D. 395, 397 and n. 2 (S.D.N.Y. 1983); *In re Plywood Anti-Trust Litigation*, 76 F.R.D. 570, 579 (E.D. La. 1976); *In re Ball*, 201 B.R. 204, 207 (Bankr. N.D. Ill. 1996). If despite this the trustee did take over rather than abandon the named plaintiff's claim and status as class representative, he would quickly resign the representative role to someone else. In the normal case and probably in this case the trustee's involving himself in the class action suit even just to the extent of unburdening himself of the role of class representative would not be worth the bother. That is doubtless why he tried to abandon Morlan's claim.

Likewise it is doubtful that any of Morlan's creditors would have wanted the trustee to involve himself in the class action, though this would depend on the value of Morlan's claim, which we don't know. The expenses the trustee incurred in prosecuting the claim would be subtracted from the assets of the estate in bankruptcy, though it turned out there were no other assets—another good reason for abandonment of the debtor's claim: how was the trustee to finance the class action? The creditors, or at least those who attended the creditors' meeting (a potentially significant qualification), knew from Morlan's statement at the creditors' meeting that Morlan had another, an unscheduled, asset, consisting of a legal claim of some sort, and so they could have objected, invoking section 554, when they learned that the trustee intended to treat the bankruptcy as a no-asset, no-distribution bankruptcy. We cannot find any indication in the record that the trustee formally notified the creditors in advance that he would treat Morlan's bankruptcy so, though they could have guessed it from the fact that Morlan's schedule of assets filed in the bankruptcy proceeding lists only some clothing and other personal effects of small value. The creditors didn't object to the closing of the case without any payment to them and it is now nearly three years since it was closed and

during this period no creditor has moved to reopen it (see 11 U.S.C. § 350(b); *In re Shondel*, 950 F.2d 1301, 1306 (7th Cir. 1991); *Miller v. Shallowford Community Hospital, Inc.*, 767 F.2d 1556, 1559 n. 4 (11th Cir. 1985) (per curiam)) on the ground that the debtor's estate contained an asset after all, namely the ERISA claim (or on any other ground, for that matter).

By this time, any claim the creditors might have to step into Morlan's shoes in the class action may well have been abandoned or otherwise forfeited. See *In re FBN Food Services, Inc.*, 82 F.3d 1387, 1395-96 (7th Cir. 1996); *In re Haker*, 411 F.2d 568, 569 (5th Cir. 1969) (per curiam). With no fixed time limits on reopening a bankruptcy proceeding analogous to the limits in some subsections of Fed. R. Civ. P. 60(b), see Fed. R. Bankr. P. 9024; *In re Bianucci*, 4 F.3d 526, 528 (7th Cir. 1993); *In re Emmerling*, 223 B.R. 860, 864-65 (2d Cir. BAP 1997), the equitable origins and character of bankruptcy point to laches as the proper doctrinal guide to cutting off belated efforts to reopen. See, e.g., *Hawxhurst v. Pettibone Corp.*, 40 F.3d 175, 181 (7th Cir. 1994); *In re Bianucci, supra*, 4 F.3d at 528; *In re Centric Corp.*, 901 F.2d 1514, 1519 (10th Cir. 1990); *In re Ridill*, 1 B.R. 216, 218 (C.D. Cal. 1979). Laches requires a showing of (1) unwarranted delay (2) prejudicial to the party opposing the reopening, e.g., *National R.R. Passenger Corp. v. Morgan*, 122 S.Ct. 2061, 2077 (2002); *Cox v. McBride*, 279 F.3d 492, 494 (7th Cir. 2002), and might well bar a reopening here, because of the combination of the creditors' failure to pursue the revelation at their meeting that Morlan had a legal claim with the prejudice to Morlan's class action suit should the creditors at this late date seek to intervene to take back a chunk of it. Still, we hesitate to be too emphatic in this suggestion since, as noted earlier, not all the creditors may have been present at the creditors' meeting, and anyway Morlan's reference there to his claim was vague and fleeting.

And there is a distinct possibility that at least when the class was certified back in March 2000, only six months after the bankruptcy proceeding ended, the creditors could have persuaded the bankruptcy court to reopen it and could have established in the reopened proceeding that part of the ERISA claim really did belong to the debtor's estate rather than to the debtor personally. But this possibility does not show that Morlan lacked standing to sue to enforce that part of the claim when the class was certified. That the creditors might be able to reopen the bankruptcy proceeding and wrest a piece of Morlan's ERISA claim from him placed a cloud over his title, but standing does not require a perfectly clear title to the claim sued upon. *United States v. $557,933.89, More or Less, in U.S. Funds*, 287 F.3d 66, 75, 78-79 (2d Cir. 2002); *United States v. Rodriguez-Aguirre*, 264 F.3d 1195, 1204 (10th Cir. 2001). This is a corollary of the probabilistic character of the requirement of standing, upon which we have commented in other cases, such as *Diaz v. Duckworth*, 143 F.3d 345, 347 (7th Cir. 1998), and *Price v. Pierce*, 823 F.2d 1114, 1118 (7th Cir. 1987); see also *Hohn v. United States*, 262 F.3d 811, 818 (8th Cir. 2001). "A reasonable probability that a plaintiff will get an apartment that he wants sooner if he wins his suit is a sufficiently tangible expected benefit of suit to confer standing under the liberal principles that prevail nowadays," as we said in *Price*; and likewise here, because when the class was certified there was a reasonable probability (since ripened into a near certainty) that Morlan would be able to keep any proceeds from the suit rather than having to turn them over to his creditors. It would help in assessing this probability to know the size of the assignable portion of Morlan's claim; the smaller it was, the less likely a reopening; but the probability falls so far short of certainty as not to disturb our conclusion that Morlan had a sufficient interest in the as-

signable portion of the claim to have standing to sue to enforce it. The defendants' argument amounts to saying that they, because Morlan's creditors might still try to take away Morlan's claim from him, cannot be sued; that they, because the trustee or the bankruptcy judge may have dropped the ball, are to get off scot free. We cannot see the sense of that.

This way of putting their argument suggests, moreover, an alternative basis for rejecting the defendants' challenge to Morlan's standing. The steps that the trustee took to abandon Morlan's claim would suffice to establish abandonment under the ordinary principles applicable to abandonment, e.g., *United States v. Locke*, 471 U.S. 84, 98 (1985); *Vieux v. East Bay Regional Park District*, 906 F.2d 1330, 1341 (9th Cir. 1990); *People ex rel. Illinois Historic Preservation Agency v. Zych*, 710 N.E.2d 820, 825 (Ill. 1999), a fundamental doctrine of property law; it is only the provisions of the Bankruptcy Code regarding abandonment that cast doubt on whether Morlan's claim really did revest in him. But those provisions are intended for the benefit of creditors, none of whom complained or is complaining about the trustee's failure to comply with them. They are not intended for the benefit of alleged violators of the debtor's legal rights, and so the defendants are the ones who lack standing—standing to object to the abandonment of Morlan's claim. See *Warth v. Seldin*, 422 U.S. 490, 500 n. 12 (1975); *North Shore Gas Co. v. E.P.A.*, 930 F.2d 1239, 1243 (7th Cir. 1991). The possession of a legally protectable interest is a prerequisite to suing because otherwise the possessor of that interest would find himself unable to enforce it if another person, an officious intermeddler, had brought suit to enforce it (like a bounty hunter) first. *Singleton v. Wulff*, 428 U.S. 106, 114 (1976) (plurality opinion); *People Organized for Welfare & Employment Rights*

*(P.O.W.E.R.) v. Thompson*, 727 F.2d 167, 173 (7th Cir. 1984); *Frank Rosenberg, Inc. v. Tazewell County*, 882 F.2d 1165, 1170 (7th Cir. 1989); *Joyner v. Mofford*, 706 F.2d 1523, 1526-27 (9th Cir. 1983). This principle has been enforced with particular stringency precisely in bankruptcy proceedings, to prevent confusion over the ultimate ownership of the assets formerly owned by the bankrupt. *In re Westwood Community Two Ass'n, Inc.*, No. 01-14473, 2002 WL 1299123, at *2 (11th Cir. June 13, 2002); *In re Troutman Enterprises, Inc.*, 286 F.3d 359, 364 (6th Cir. 2002); *In re PWS Holding Corp.*, 228 F.3d 224, 248 (3d Cir. 2000); *Kane v. Johns-Manville Corp.*, 843 F.2d 636, 643, 644 (2d Cir. 1988). Given the strong possibility that an effort by Morlan's creditors at this late date to seize his legal claim would be barred by the doctrine of laches, no one can be said to have a higher title to the claim than he, so that if he lacks standing, no one has standing.

The judgment is reversed with directions to reinstate Morlan's class action suit.

REVERSED AND REMANDED.

A true Copy:

        Teste:

_____
**Clerk of the United States Court of**
**Appeals for the Seventh Circuit**