Mary L. POLIS, Appellant,

v.

GETAWAYS, INC., doing business as
Global Excursions, Appellee.

No. 98 C 5001.

United States District Court,
N.D. Illinois,
Eastern Division.

Dec. 30, 1998.

Sara E. Lorber, Federal Trade Commission, Assistant Regional Director, Daniel A. Edelman, Edelman & Combs, Samuel Z. Goldfarb, Attorney at Law, Chicago, IL, for appellant.

Daniel J. Zollner, Debra A. Osmond, Lord, Bissell & Brook, Chicago, IL, for appellee.

### MEMORANDUM OPINION AND ORDER

ZAGEL, District Judge.

Mary L. Polis appeals from an order of the bankruptcy court allowing her to exempt only $900 of any future proceeds of a cause of action brought by her against a creditor. I affirm.

Polis filed for relief under Chapter 7 of the Bankruptcy Code (hereinafter "Code") in December 1997 and a trustee was appointed. Among the creditors Polis identified in her initial filings is Getaways, Inc. (hereinafter "Getaways"), a travel packager listed as having an undisputed claim of $5,995. The trustee held a Section 341 creditors' meeting and filed a no asset report on February 9, 1998.

Three days later, Polis amended her asset schedule (schedule B) to list as personal property a number of causes of action against Getaways for violation of certain consumer fraud laws. Explaining that the value of these not-yet-filed claims was at

best speculative, she characterized their value as "unknown" on the asset sheet. She also listed the causes of action in her amended schedule of exempt property (schedule C) as part of the $2000 "wildcard" exemption she is permitted under Illinois law. 735 ILCS 5/12–1001(b). Under that exemption, she claimed $1,100 of personal property and also 100 percent of the value of the causes of action. Thirty days passed without objection, the bankruptcy court entered a discharge order, and the case was closed on April 2, 1998.

It turned out, however, that Polis had not notified the trustee or Getaways of its amended schedules and, when they cried foul, the Bankruptcy Judge reopened the case. He did so to consider whether the value of the causes of action exceeded the $900 left to Polis under the wildcard exemption. At the hearing, he considered evidence that Getaways had offered $1,500 to settle the case and that the trustee had rejected the amount. The court held that Polis could not exempt the entire claim, that it remained an asset of the estate and thus controlled by the estate, and that Polis could exempt only her interest in any proceeds of the cause of action, which equals anything up to the $900 remaining in her wildcard exemption allowance.

The context of this case can be inferred from the current state of the law and of the docket of the Northern District of Illinois. In the last few years, there have been a large number of class actions filed to enforce the Truth in Lending Act (TILA) and the Fair Debt Collection Act. *See, e.g., Wilborn v. Dun & Bradstreet Corp.*, 180 F.R.D. 347 (N.D.Ill.1998); *Jenkins v. Union Corp.*, 999 F.Supp. 1120 (N.D.Ill.1998); *Ball v. Nationscredit Financial Services Corp.*, 207 B.R. 869 (N.D.Ill.1997). It is reasonable to believe that many of these cases arise from bankruptcy filings. Many who seek the protection of bankruptcy court have outstanding loans from financial institutions and have been the subject of collection efforts by those institutions and other creditors.

When they seek bankruptcy it is likely that, for the first time, a lawyer will examine the loan documents and the collection letters. If that lawyer perceives a cause of action, the lawyer may pursue the case or refer the client to a specialist in the field. While there is not all that much to be had from individual claims, an undisclosed claim may form the basis for a class action.

Few persons or institutions in this country would want to be a defendant in a class action, and lenders and debt collectors are no exception. By virtue of adopting certain practices they can diminish their risk of being subject to class actions. Many lenders are using arbitration agreements to push TILA disputes out of court and into a forum where class actions may or may not be permissible. In a case like this a lender or a debt collector might also seek to deprive class action lawyers of adequate class representatives by adopting a strategy of settling strong (or weak) causes of action with the bankruptcy trustee. The trustee's purposes and interests are not necessarily congruent with those who would serve as the debtor's lawyers in the class action lawsuit. Even where the trustee is demonic in pursuit of the cause of action, there is still the fact that the trustee, not the debtor or the debtor's lawyers, is in charge of pursuing the claim.

None of this is necessarily true here. I assume, for purposes of decision, that Polis herself is the driving force behind the lawsuit and Getaways is simply offering money because it honestly believes that she is morally or legally entitled to it. The decision being reviewed here does not depend on the parties' motives in litigating the TILA action, but the decision could affect larger stakes than might be readily apparent. With that, I turn to the fundamentals of bankruptcy law and the facts of this case. I review conclusions of law *de novo* and findings of fact for clear error. *See Matter of Salzer*, 52 F.3d 708, 711 (7th Cir.1995).

■ Polis appeals the bankruptcy court's decision to limit her interest in the

proceeds of the lawsuit, arguing that the judge improperly valued the case at more than $900 when its fair market value at the time of filing was zero dollars. Essentially, Polis argues that there is no market for causes of action, that speculative value is no value, and that therefore there is more than enough room in her wildcard exemption for the entire cause of action. The issue here is largely whether that zero is a permissible or an impermissible legal fiction, because it is clear that it is a fiction. We know this because, on March 24, 1998, an experienced lawyer filed a federal class action lawsuit against Getaways, claiming violations of TILA and the Illinois Consumer Fraud Act. That case is pending in the Northern District of Illinois, but as estate property must be valued for exemption purposes as of the date the bankruptcy petition is filed, see 11 U.S.C. § 522(2), the bankruptcy court did not have the luxury of waiting to see the final outcome of that case before determining the value of the exemption. Neither, of course, do I.

■ The amount and type of property that a debtor may exempt is defined by applicable federal and state statutory provisions. See 11 U.S.C. § 522; 735 ILCS 5/12–1001. Here, Polis seeks to exempt the cause of action under the Illinois wildcard provision, which allows a debtor to exempt any property not already designated, up to $2000 in value. 735 ILCS 5/12–1001(b). Potential causes of action, including TILA actions, that exist at the time a bankruptcy petition is filed become property of the bankruptcy estate, see Matter of Yonikus, 974 F.2d 901, 904–05 (7th Cir. 1992), and may be claimed as exempt, in whole or part. See Matter of Smith, 640 F.2d 888, 891 (7th Cir.1981).

■ As no market exists for pending or potential causes of action, its value is "unliquidated and contingent, and claiming a specific dollar exemption is, at best, speculation." Wissman v. Pittsburgh Nat'l Bank, 942 F.2d 867, 871 (4th Cir.1991). Contrary to Polis's assertion, however, the fact that the value of a cause of action is speculative at the time of filing does not mean that its value is zero. See In re Bronner, 135 B.R. 645, 648 (9th Cir. BAP 1992). Rather, the suit's value is established, and all that is required to reveal the value is that a competent lawyer pursue the claim to resolution or settlement through the court system. See id. Put another way, it is not that the cause of action has no value at the time the petition was filed or, as Polis suggests, that any ultimate value constitutes post-petition appreciation; rather, it is only that the process of valuation required—a judicial proceeding or successful negotiation between the parties—is a lengthy one. See Wischan v. Adler, 77 F.3d 875, 877 (5th Cir. 1996) ("The fact that causes of action may have borne fruit in settlement or judgment after commencement of the bankruptcy case does not transform them into post-petition property of the debtor").

■ As a result, valuing the lawsuit at an amount less than the statutory maximum does not cause the entire property claimed as exempt to become exempt. Rather, a debtor's interest in a cause of action cannot exceed the remaining value of his or her exemptions. See In re Bronner, 135 B.R. at 648 (limiting debtor's interest in cause of action to dollar value of remaining exemption); Wissman, 942 F.2d at 871 (recognizing same limitation). See also Taylor v. Freeland & Kronz, 503 U.S. 638, 642, 112 S.Ct. 1644, 1647–49, 118 L.Ed.2d 280 (1992) (assuming debtor not entitled to exempt full value of proceeds of cause of action).

■ The bankruptcy court therefore properly limited Polis's interest in the causes of action to any future proceeds up to $900, the amount remaining in her wildcard exemption. Polis's own valuation of the lawsuit at less than $900 is not dispositive, as it is evident at this stage that the suit's true value could be greater than that. Polis has filed actions under TILA and the Illinois Consumer Fraud Act. TILA provides up to $1000 in statutory

damages, as well as recovery of actual damages and attorneys' fees, *see* 15 U.S.C. § 1640(a), and the state statute provides for actual damages, punitive damages, and attorneys' fees.[1] *See* 815 ILCS 505/10a. Further, based on experience with class action lawsuits, it is not at all unreasonable that a successful named class representative would receive at least $1000 for serving in that capacity. Since it is not a certainty that Polis's recovery would be less than the remaining $900 in her wildcard exemption, the court correctly limited Polis's exemptible interest in the cause of action.

For their part, the appellees would have courts use the settlement value of a case as a fair estimate of its market value at the time of filing. Specifically, they argue that the value of the suit is not speculative at all, but that there is an actual value of at least $1500, as indicated by the trustee's rejection of Getaways' settlement offer in that amount. Use of settlement value to approximate the true value of a cause of action is problematic for a number of reasons. First, it is a workable valuation tool only in those cases where an offer of settlement is actually made, leaving unresolved what to do in those cases where the defendant has not made such an offer. Second, it is often a poor approximation of the value of the cause of action, especially in a case such as the present one where a number of competing interests and duties come into play. Here, for example, the defendant creditor extended a settlement offer not to the named representative of a class action, but to the trustee of the representative's bankruptcy estate, whose own interest in the case is controlled by his fiduciary duties to the estate. Where the trustee's loyalties are not to other putative members of the class, his or her acceptance or rejection of a settlement offer is not necessarily representative of the true value of the action.

As a matter of policy, use of the settlement value as a valuation tool could also frustrate efforts of debtors to control those causes of action where individual recovery is capped at a level low enough to warrant exemption of the entire case. Take, for example, a case where the plaintiff debtor could prove definitively that the total value of the cause of action would never exceed the remaining value of his or her exemption, a personal injury suit, say, where actual damages are $200 and the statute provides for treble damages, but no punitive damages or attorneys' fees. In such a case, the debtor could exempt the cause of action in its entirety and thus regain control of the suit. Knowing this, however, a savvy class action defendant could make a settlement offer over and above the plaintiff's exemption limit, thus allowing the estate to maintain control, and frustrating the debtor's attempt to do so, a course of conduct arguably against good policy.

▇▇▇ It is not clear from the Bankruptcy Judge's ruling whether he simply considered the value of Polis's cause of action to be speculative with the potential to exceed $900, or whether he valued the case for exemption purposes at the settlement value. As I can affirm on any grounds, *see Farley, Inc. v. Chiappetta,* 163 B.R. 999, 1007 n. 19 (N.D.Ill.1994), and the court's ruling is consistent with the former approach, the decision of the Bankruptcy Court is affirmed.

---

1. Polis argues that attorneys' fees should not be considered for purposes of considering the true value of the cause of action, as the legal work at issue will be performed after the filing of the bankruptcy suit and the fees therefore constitute post-petition appreciation in value. As some combination of the actual and statutory damages, or the actual and punitive damages, could themselves exceed $900, I decline to reach this issue.