In the
United States Court of Appeals
For the Seventh Circuit

No. 99-1025

In Re:  Mary L. Polis,

Debtor-Appellant.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern
Division.
No. 98 C 5001--James B. Zagel, Judge.

No. 99-1577

Mary L. Polis,

Plaintiff-Appellant,

v.

Getaways, Inc.,

Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern
Division.
No. 98 C 1808--Ann Claire Williams, Judge.

Argued January 13, 2000--Decided June 28, 2000

   Before Posner, Chief Judge, and Bauer and
Rovner, Circuit Judges.

   Posner, Chief Judge.  We have
consolidated two appeals that present the
question of how to value a cause of
action for purposes of determining
whether a debtor can exempt it in
bankruptcy. Mary Polis was in Chapter 7
bankruptcy when she learned that she
might have a cause of action against
Getaways, a travel service, under the
Truth in Lending Act, 15 U.S.C. sec.sec.
1601 et seq., and the Illinois consumer
protection statute, 815 ILCS 505/1 et
seq., for concealment of the finance
charge in the $5,995 price that she
agreed to pay over a five-year period for

a travel package that she'd bought from Getaways. She sought to exempt the cause of action, assigning it a value of zero.

At roughly the same time, she became the first and only named plaintiff in a class action against Getaways, the class consisting of persons like herself who had been victimized (the suit alleges) by the travel services's unlawful concealment of the finance charge in its installment travel packages. The day after the filing of the class action she was discharged from bankruptcy, and a week later the bankruptcy proceeding was terminated. Shortly afterward both Getaways and the trustee in bankruptcy moved to reopen the bankruptcy proceeding (see 11 U.S.C. sec. 350(b); In re Shondel, 950 F.2d 1301, 1304-06 (7th Cir. 1991)) on the ground that Polis's cause of action in the class action suit against Getaways was worth more than $900 and therefore had been improperly exempted from the estate in bankruptcy.

Illinois law allows an insolvent debtor to exempt $2,000 worth of personal property, 735 ILCS 5/12-1001(b), and Illinois has taken advantage of the provision of the Bankruptcy Code that allows states to substitute their own exemptions for those in the Code. 11 U.S.C. sec. 522(b); Clark v. Chicago Municipal Employees Credit Union, 119 F.3d 540, 543 (7th Cir. 1997). Besides the cause of action, Polis exempted $1,100 worth of other personal property, which is why she cannot exempt the cause of action if it is worth more than $900. Although a cause of action is perhaps not "personal property" in the usual sense, the definition in the Bankruptcy Code of property belonging to the debtor's estate as including (with irrelevant exceptions) "all legal or equitable interests of the debtor in property as of the commencement of the case," 11 U.S.C. sec. 541 (a)(1), has uniformly been interpreted to include causes of action, e.g., In re Yonikus, 996 F.2d 866, 869 (7th Cir. 1993), and we are given no reason to suppose that the Illinois exemption invoked by Polis is narrower.

The bankruptcy court, seconded by the district court, agreed with the objectors. 242 B.R. 653 (N.D. Ill. 1998). The district court (another district judge) then dismissed the class action on

the ground that Polis did not have standing to bring it since the trustee rather than she was the owner of the claim on which it was based. Neither party has remarked the oddity of Polis's having filed the class action before her Truth in Lending claim was exempted, which is to say at a time when it belonged to the trustee rather than to her. And speaking of oddities, Polis's appeals from the two district court decisions (why the bankruptcy appeal and the class action were assigned to different judges is still another puzzle) present the spectacle of a plaintiff's lawyer disparaging his client's claim in order to persuade us that it is indeed worth less than $900 and a defendant's lawyer puffing up that claim in order to persuade us that it is worth more than the amount at which the plaintiff is valuing it. (The trustee has not filed a brief.) If the plaintiff were arguing that her claim was worth zero, this would imply that her class action suit was frivolous; but her argument is rather that the claim had no market value. This is wrong, as we're about to see, but it is not inconsistent with her arguing, as she does, that her claim has a nonmarket value that a court would recognize by awarding her damages. She also argues that if it has a market value greater than zero, still that value is less than $900.

   The judges who ruled against Polis were plainly disturbed by the prospect of windfall gains to a debtor who by virtue of having exempted a legal claim from bankruptcy and thus put it beyond the reach of her creditors emerges from bankruptcy owning free and clear what turns out to be a valuable asset. But that possibility is built into the valuation scheme that the Bankruptcy Code uses to determine whether a debtor has exceeded her exemption. The Code provides that the "value" of property sought to be exempted "means fair market value" on the date the petition for bankruptcy was filed, 11 U.S.C. sec. 522(a)(2), unless the debtor's estate acquires the property later. On the date Polis filed her petition in bankruptcy, she had not yet sued Getaways, but the legal claim on which the suit was based, having arisen out of a transaction (the sale of the travel package) that had occurred before the petition was filed, was already

"property" of the debtor and hence of the debtor's estate in bankruptcy. Cable v. Ivy Tech State College, 200 F.3d 467, 472-73 (7th Cir. 1999); In re Carousel Int'l Corp., 89 F.3d 359, 362 (7th Cir. 1996); In re Smith, 640 F.2d 888, 890 (7th Cir. 1981) (Truth in Lending Act claims--just as here); Northview Motors, Inc. v. Chrysler Motors Corp., 186 F.3d 346, 350 (3d Cir. 1999); In re Wischan, 77 F.3d 875, 877 (5th Cir. 1996); Wissman v. Pittsburgh National Bank, 942 F.2d 867, 869-71 (4th Cir. 1991).

Although we may assume (without having any case law to go on) that a Truth in Lending Act claim is not assignable and so cannot be the subject of a "market" transaction in the literal sense, that is irrelevant. Integrated Solutions, Inc. v. Service Support Specialties, Inc., 124 F.3d 487, 490-91 (3d Cir. 1997); In re Wischan, supra, 77 F.3d at 877; Sierra Switchboard Co. v. Westinghouse Electric Corp., 789 F.2d 705, 709 (9th Cir. 1986). Legal claims are assets whether or not they are assignable, especially when they are claims for money; as a first approximation, the value of Polis's claim is the judgment that she will obtain if she litigates and wins multiplied by the probability of that (to her) happy outcome. That is roughly how parties to money cases value them for purposes of determining whether to settle in advance of trial. They do so whether or not the claim is assignable; unassignable claims (tort claims, for example) command positive prices in the settlement "market."

The possibility that the debtor will obtain a windfall as a consequence of the exemptions recognized by the Bankruptcy Code arises from the fact that the date of valuation of an asset for purposes of determining whether it can be exempted is the date on which the petition for bankruptcy is filed; it is not a later date on which the asset may be worth a lot more. Often property appreciates in a wholly unexpected fashion. A lottery ticket that turns out against all odds to be a winner is merely the clearest example. A debtor who exempted a painting thought to be worthless in a market sense, having a purely sentimental value, might discover the day after his discharge from bankruptcy that it had suddenly increased in value because other

paintings by the artist had just been bought by the Metropolitan Museum of Art; the creditors could not reach it, provided that until then its fair market value had in fact been slight. Common stock that had traded at $100 a share on the date the petition for bankruptcy was filed might a month later be worth $1,000, and again the creditors would be out of luck if the debtor had exempted her shares by claiming the personal property exemption for them. And so it is with a legal claim. It might when it first accrued have seemed so "far out" that its fair market value would be well within the limits of the exemption, and yet--such are the uncertainties of litigation--it might turn into a huge winner.

This feature of the Code's valuation scheme should not be thought a disreputable loophole. If the assets sought to be exempted by the debtor were not valued at a date early in the bankruptcy proceeding, neither the debtor nor the creditors would know who had the right to them. So long as the property did not appreciate beyond the limit of the exemption, the property would be the debtor's; if it did appreciate beyond that point, the appreciation would belong to the creditors, who thus might--if they still remembered their contingent claim to the property--reclaim it many years after the bankruptcy proceeding had ended. The framers of the Bankruptcy Code could have made ineligible for exemption property that has an unusual propensity to fluctuate in value, thus reserving windfall gains to the creditors; but they did not do so, perhaps because of the difficulty of defining the category or allocating its fruits across creditors. An alternative would be to keep the bankruptcy proceeding open indefinitely; the objections are self-evident.

The need in valuing an asset in advance to adjust for the uncertainty that its potential value will be realized is the key to the mistake made here by the bankruptcy and district courts. When there is uncertainty about whether some benefit, here an award of money in a class action suit, will actually be received, the value of the (uncertain) benefit is less than the amount of the benefit if it is received. A claim for $X is not worth $X. A 50 percent chance of

obtaining a $1,000 judgment is not worth $1,000. As a first approximation it is worth $500 (less if the owner of the chance is risk averse, more if he is risk preferring, but these are refinements unnecessary to consider in this case). The failure to make any such adjustment here was fatal because of the limited stakes involved in Polis's claim. A successful plaintiff in a Truth in Lending Act suit can obtain actual damages plus statutory damages, the latter being equal to twice the finance charge, except that the statutory damages are confined within a range from $100 to $1,000. 15 U.S.C. sec. 1640(a); Cowen v. Bank United of Texas, FSB, 70 F.3d 937, 941 (7th Cir. 1995). There is no indication of what the finance charge was here--Getaways denies there was any finance charge--or whether Polis suffered any actual damages. It is quite possible, therefore, that her total recoverable damages under the Truth in Lending Act count of her complaint are only $100, in which event even a 100 percent probability of winning would not pierce the ceiling of her personal property exemption. Even if she can count on getting the maximum statutory damages of $1,000--and there is no reason to suppose she can--the value of her claim on the date the petition in bankruptcy was filed would not exceed $900 unless she had more than a 90 percent chance of obtaining the maximum statutory damages, an issue not discussed by either the bankruptcy court or the district court. And while it is true that punitive damages are recoverable under the Illinois statute on which Polis is also suing, 815 ILCS 505/10a, no effort has been made to quantify that possibility, which may be very small.

Getaways did offer Polis $1,500 to settle the case, which was turned down; and a refused settlement offer normally is good evidence of the minimum fair market value of a claim. The bankruptcy court thought, therefore, that Getaways' offer showed that Polis's claim was worth at least $900. But the district court was right to be skeptical about this because of the class-action nature of the suit. Since Polis was the only named plaintiff, since the statute of limitations was running (has in fact now run), and since the trustee in bankruptcy apparently had no interest in pursuing the claim against

Getaways (another reason to doubt the claim has much value), Getaways had a chance to kill the class action either by settling with Polis before the class was certified, see Mars Steel Corp. v. Continental Illinois National Bank & Trust Co., 834 F.2d 677, 680-81 (7th Cir. 1987), or simply by convincing the court that the claim should not be exempted and would therefore revert to the trustee. In other words, for $1,500 Getaways may have been trying to buy not only Polis's claim but also, in effect, the claims of all the other members of the class as well-- "in effect" because Getaways was not offering them anything and because the offer might kill the class action even if Polis rejected it.

We suppose it could be argued that Polis's "property" for exemption purposes included not only her claim but also the strategic position that she might occupy if she were a (especially if she were the only) named plaintiff. This strikes us as a weak argument, straining the statutory term "property" beyond its reasonable limits, but in any event it has not been made and it has thus been forfeited.

We do not know how much of the $1,500 offer represents the value of Polis's claim by itself, and so we cannot use that offer as a substitute for the present-value calculation of the claim that the bankruptcy and district courts have failed to make. If the only problem were that they had failed to analyze the exemption issue correctly, our proper course would be to remand for better findings. But we have scoured the record and have found no evidence from which a trier of fact could rationally infer that Polis's claim was worth more than $900 on the day she filed for bankruptcy. Getaways had the burden of proving that it was worth more, Bankr. R. 4003(c), and has failed to carry that burden. So the decision revoking the exemption must be reversed-- and likewise the decision dismissing the class action suit. It was dismissed on the ground that, Polis having exceeded her exemption, her claim reverted to the trustee in bankruptcy, thus depriving her of standing to maintain the suit (and remember that there is no other named plaintiff, that is, no other class representative, to step into her shoes). She did not exceed the exemption, as we have seen, and even if she had, this would not justify

dismissal of her suit, for that would cut down her exemption without any warrant for doing so. She was entitled to exempt $2,000 of her personal property, and having exempted only $1,100 worth of such property besides her legal claim against Getaways was entitled to exempt so much of that claim as would not pierce the ceiling of the exemption. In other words she was entitled to exempt $900 worth of the fair market value of her claim. Wissman v. Pittsburgh National Bank, supra, 942 F.2d at 871.

This would give her a real stake in the class action suit even if it were less than the fair market value of the claim, the difference being the share of the claim that belonged to the estate in bankruptcy. The dismissal of the class action suit for want of standing was therefore erroneous even if, contrary to our conclusion, the claim was worth more than $900. We need not get into the question of who would control the litigation, Polis or the trustee, if they shared the cause of action in the manner that we've sketched. The issue is academic, since we have held that the claim is hers and since anyway the trustee has indicated no interest in suing Getaways.

Although the dismissal of the suit must therefore be reversed, it is unclear what follows. For remember that the suit was filed before Polis's claim was exempted and thereby taken out of the debtor's estate, which is in the trustee's control, not hers. If the district court therefore had no jurisdiction over her suit when it was filed, then, since the statute of limitations has now run on her claim, barring her from refiling her complaint, she may be blocked from continuing with the suit. But we leave that to be sorted out on remand. Reversed.