In re Jerry E. JONES, Debtor.

**David E. Mullis, Trustee, Plaintiff,**

v.

**Aggeorgia Farm Credit, ACA, lienholder; Agro Distribution, LLC, lienholder; Sumner Rainbow Farm Services, Inc., lienholder; John E. Jones, Jr., transferee; Mary Jones, transferee; and Jerry E. Jones, debtor, Defendants.**

Bankruptcy No. 02–12496–JDW.
Adversary No. 05–1024.

United States Bankruptcy Court,
M.D. Georgia,
Albany Division.

Nov. 16, 2005.

John C. Spurlin, Tifton, GA, for Debtor.

Thomas D. Lovett, Kelley, Lovett & Blakey, P.C., Valdosta, GA, for trustee.

Randy Dill, vice president, Tifton, GA, pro se.

Hank Pittman, Tifton, GA, for Agro Distribution.

David A. Garland, Albany, GA, for Sumner Rainbow Farm Servs.

John S. Sims, Jr., Tifton, GA, for John E. Jones, Jr. and Mary Jones.

## MEMORANDUM OPINION

JAMES D. WALKER, JR., Bankruptcy Judge.

This matter comes before the Court on Debtor's motion for summary judgment. This is a core matter within the meaning of 28 U.S.C. § 157(b)(2)(O). After considering the pleadings, the evidence, and the applicable authorities, the Court enters the following findings of fact and conclusions of law in conformance with Federal Rule of Bankruptcy Procedure 7052.

### Undisputed Facts

Debtor Jerry E. Jones filed a Chapter 7 petition on October 24, 2002. On Schedule A of his petition he listed a 401–acre farm in Worth County as an asset valued at $501,250 [1] and subject to secured claims of

1. Although there has been some dispute about the value of this property, at the present time,

$555,092. Debtor held an undivided half interest in the 401 acres, which was co-owed by his brother, Larry Jones. Debtor claimed no exemption in the property on Schedule C. However, on October 29, 2003, Debtor filed an amended Schedule C that claimed an exemption of $5,450 in the 401 acres pursuant to O.C.G.A. § 44–13–100(a)(6). In a document filed with the amendment, Debtor explained that he did not believe he had any equity in the property, but he "assert[ed] the statutory exemptions to the maximum extent allowed by law." (Case No. 02–12496, Docket No. 57, ¶ 2–3, filed Oct. 29, 2003.)

In an order on a motion to avoid liens entered on December 12, 2003, the Court ordered Debtor to amend his exemptions to conform with the limits allowed by law.[2] On December 24, 2003, Debtor filed a second Amended Schedule C, claiming an exemption of $1,000 in the 401 acres.[3] As a supplement to the amendment, he filed a document stating as follows:

> The Debtor's previously filed Schedule C and any amendments thereto list a possible exemption in a 401–acre tract of real estate.... The Debtor does not believe there is any equity whatsoever in the 401–acre tract ... but lists the propert[y] in the event the Court, the Trustee, a creditor or any other interested party claims that the fair market value of the property exceeds the Debtor's estimate, or that there is some equity in the propert[y]....

In the Court's Order dated December 12, 2003, the Court ordered the Debtor to amend his exemptions to conform with the maximum limits provided by law. *The purpose of this amendment is to comply with the Court Order and to maximize the available exemptions.* In the event the Court determines that one or more of the properties have some equity, the *Debtor respectfully asserts the statutory exemptions to the maximum extent allowed by law.*

(Case No. 02–12496, Docket No. 74 ¶ 2–3, filed Dec. 24, 2003 (emphasis added).) The Trustee did not object to the exemption.

The Trustee initiated this adversary proceeding to determine the interests of the Defendants in the 401 acres, including the extent of Debtor's exemption. Debtor filed the summary judgment motion at issue arguing that he is entitled to any appreciation in the value of the 401 acres and that under a court-approved settlement agreement, the Trustee relinquished his right to dispute this claim. Mary and Jerry E. Jones also filed a motion to dismiss based on the settlement agreement. The Court held a hearing on the matter on September 19, 2005, at which time all the Defendant-lien creditors expressed support for the Trustee's position. For purposes of this opinion, the Court will assume, without deciding, that the Trustee is correct that the settlement agreement does not affect his right to dispute the exemption issue. For the following reasons, the Court finds that Debtor exempted the 401–acre tract in its entirety and, therefore, is entitled to the benefit of any appreciation in the land's value. This decision makes any further consideration of

---

the parties have agreed the Court does not need to adjudicate the issue of value for purposes of this opinion.

**2.** Debtor claimed his $5,450 exemption under O.C.G.A. § 44–13–100(a)(6), known as the "wildcard" provision. It provides for an exemption of up to $600 in any property of the debtor plus up to $5,000 of any *unused* homestead exemption. Because Debtor had claimed the full $10,000 homestead exemption available to him, he could not claim an exemption in the 401 acres exceeding $600.

**3.** Among other changes, Debtor also reduced his homestead exemption to $5,000.

the settlement issue, including the motion to dismiss of Mary and Jerry E. Jones, moot.

## Conclusions of Law

Summary judgment is governed by Federal Rule of Civil Procedure 56, made applicable to adversary proceedings through Federal Rule of Bankruptcy Procedure 7056. Under Rule 56, a party is entitled to summary judgment when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c); *McCaleb v. A.O. Smith Corp.*, 200 F.3d 747, 750 (11th Cir.2000).

■ In this case, no material facts are in dispute. Thus, the Court need only decide the legal issue of whether Debtor or the bankruptcy estate is entitled to the appreciation, if any, in the value of the 401 acres. To answer this question, the Court must determine whether Debtor exempted the property itself or merely the amount of $1,000.

The Supreme Court addressed this issue indirectly in *Taylor v. Freeland & Kronz*, 503 U.S. 638, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992). In *Taylor*, the debtor was able to retain the proceeds of an employment discrimination lawsuit in full, even though they exceeded the statutory exemption amount, because the trustee failed to timely object to her exemption. *Id.* at 643–44, 112 S.Ct. at 1648. The debtor had listed the value of the lawsuit as "unknown" and had listed the value of the exemption as

"unknown."[4] *Id.* at 640, 112 S.Ct. at 1646. The trustee made no objection, and the debtor settled the suit for $110,000. The trustee filed a complaint for turnover of the settlement money as property of the estate. *Id.* at 641, 112 S.Ct. at 1647.

Prior to filing for bankruptcy the debtor had retained the law firm of Freeland & Kronz to represent her in the employment discrimination suit. The Pittsburgh Commission on Human Relations initially found in her favor on the issue of liability, but did not calculate damages. The Commission's decision was reversed by the Pennsylvania Court of Common Pleas, which was in turn reversed by the Pennsylvania Commonwealth Court, reinstating the verdict in the debtor's favor. On the date of bankruptcy filing, an appeal was pending in the Pennsylvania Supreme Court, and damages still had not been determined. At the § 341 meeting, Freeland & Kronz told the trustee it expected to win about $90,000 in the case. Shortly after that, the trustee informed Freeland & Kronz that he considered any lawsuit proceeds to be property of the estate, and requested more information about the lawsuit. Freeland & Kronz responded that it expected to settle the suit for $110,000. *Id.* at 640, 112 S.Ct. at 1646–47. Thus, the trustee was well aware of the law firm's expectations regarding the outcome of the lawsuit, and still failed to object to an "unknown" exemption amount.

The Court began its discussion by noting that the amount of allowable exemptions is defined by statute. *Id.* at 642, 112 S.Ct. at 1647. And, the parties agreed

---

4. The exemption schedule used by the debtor, Schedule B–4, was the predecessor to current Schedule C. Schedule C provides space for both the value of the property claimed as exempt and the amount of the exemption. Schedule B–4, however only required the debtor to report "Value claimed exempt."

Thus, when the Court states that the debtor listed the value of the lawsuit proceeds as "unknown" *on Schedule B–4*, logic indicates that the Court is referring not to the value of the lawsuit but to the amount claimed exempt. *See* 503 U.S. at 651 n. 6, 112 S.Ct. at 1652 n. 6 (Stevens, J., dissenting).

that the debtor "did not have a right to exempt more than a small portion of [the lawsuit] proceeds either under state law or under the federal exemptions...." *Id.* Nevertheless, the Court stated that the debtor "in fact claimed the full amount as exempt." *Id.* The Court did not explain how it reached that conclusion. However, even though there was no colorable basis for claiming an exemption in the entire property, the trustee's failure to timely object prevented him from later "seek[ing] to deprive [the debtor] of the exemption." *Id.* at 644, 112 S.Ct. at 1648. In other words, according to *Taylor*, if the trustee is concerned that the manner in which a debtor describes his exemptions may result in an amount exceeding that allowed by statute, the trustee must make a timely objection.

*Taylor* leaves much reasoning unstated. At issue was a turnover complaint, not an objection to exemption. To decide whether the trustee was entitled to any turnover, the Court had to determine what the debtor had exempted. If the Court made any searching inquiry into this question, it did not say so. In fact, the debtor's intent in Taylor with respect to the exemption was unclear from her schedules. It can be argued that by valuing the lawsuit as "unknown" and the amount of the exemption as "unknown," the debtor did not even claim an exemption; rather, she was stating that she did not know whether there was any property to claim as exempt. However, the Court merely noted that the debtor valued both the property and the exemption as "unknown," and concluded without any further discussion that the debtor exempted the lawsuit in full. Consequently, *Taylor* suggests a default interpretation when the exemption is vague, ambiguous, or otherwise uncertain, and the trustee fails to object. The default favors

the debtor by treating the property as having been exempted in its entirety. This aspect of the opinion, albeit ambiguous in itself, is overshadowed by the Court's focus on the time limit for objecting to exemptions.

In *Taylor,* the debtor did not list a specific amount as exempt. Some courts have relied, in part, on that fact to distinguish *Taylor.* They conclude that when a debtor puts a dollar figure to his exemption, he is not entitled to receive more than that amount. *See, e.g., In re Einkorn,* 330 B.R. 570 (Bankr.E.D.Mich.2005). In *Einkorn,* the debtors listed a timeshare property as an asset worth $1,000, encumbered by a $1,000 lien. They listed it as exempt in the amount of $1. The debtors argued that because of the lack of equity, their $1 exemption served to exempt the entire property. The trustee, on the other hand, argued that the debtors had exempted only $1. *Id.* at 571. The court agreed with the trustee, concluding that because the debtors valued the property at $1,000 and claimed an exemption of $1, *Taylor* did not apply, and the exemption was limited to $1. *Id.*

> There is a key distinction between *Taylor* and the case before the Court. The debtors in *Taylor* listed their exemption as "unknown" and claimed the entire asset exempt. In this case, the Einkorns claimed only a $1.00 interest exempt, not the entire asset. The Einkorns did not claim that the value of the property was $1.00. The Einkorns did not assert an exemption in an amount over and above their claimed exemption. *Taylor* does not compel such a result.

*Id. See also In re Heflin,* 215 B.R. 530, 533 (Bankr.W.D.Mich.1997); *In re Bregni,* 215 B.R. 850, 853 (Bankr.E.D.Mich.1997).[5]

---

**5.** These cases rely on similar Ninth Circuit

cases for the proposition that the debtor is not

In these cases, however, the courts noted, "[t]he trustee had no reason to object and no cause to believe that the claim of exemption would deprive the estate of any more than the amount claimed." *Bregni,* 215 B.R. at 853; *see also Heflin,* 215 B.R. at 533–34.

Even when an ambiguity in the exemption claim gave the trustee a reason to object, one court still held that appreciation in the asset's value belonged to the estate. *In re Sherbahn,* 170 B.R. 137, 139–140 (Bankr.N.D.Ind.1994). In *Sherbahn,* the debtor claimed an exemption in growing crops. On the date the petition was filed, the immature crops were worth $14,496. The debtor described his exemption as 41 percent of the crops and valued it at $5,950. When the crops matured and were harvested, they were worth $56,438. The debtor sought to retain 41 percent of the harvest value, $23,139, as exempt. *Id.* at 138. The court rejected the debtor's position, stating that the debtor had created an ambiguity in his schedules by listing both a percentage and a specific dollar amount as exempt and that ambiguity must be construed against him. *Id.* at 139. "A claimed exemption must be read in its entirety. This includes not only the description of the property in which the exemption was claimed but also the value the

debtor placed upon the claimed exemption." *Id.* at 140. Consequently, the court limited the debtor's exemption to the dollar amount claimed, $5,950. *Id.* Interestingly, the court made no mention of the *Taylor* case in reaching its conclusion, and it is difficult to square this case with *Taylor.* In *Taylor* when the amount of the exemption was ambiguous—"unknown"—the Court treated it as exempting the entire property.[6]

In *Stoebner v. Wick (In re Wick),* 276 F.3d 412 (8th Cir.2002), the Eighth Circuit Court of Appeals reached a result similar to *Sherbahn,* while arguing that its facts could be distinguished from *Taylor.* In *Wick,* the debtor followed the *Taylor* model by valuing certain stock options as "unknown" and claiming an exemption in those options, also with an "unknown" value. The trustee did not make a timely objection to the exemption, even though the maximum exemption the debtor was entitled to claim by statute was $3,925. The debtor exercised the option and received $97,200, which the trustee sought to acquire for the estate, minus an exemption of $3,925. *Id.* at 414.

Notwithstanding the debtor's use of "unknown" values, the court found that she did not intend to exempt the entire

entitled to more than the dollar figure he claimed as exempt. *See Alsberg v. Robertson (In re Alsberg),* 68 F.3d 312 (9th Cir.1995); *Hyman v. Plotkin (In re Hyman),* 967 F.2d 1316 (9th Cir.1992). However, as the circuit court fully explained, it reached this conclusion based on a peculiarity of California exemption law. 967 F.2d at 1318. In California, the homestead exemption does not apply to the property; it applies to the proceeds of the sale of the property. *Id.* Thus, the exemption does not come into play until after the residence has been sold and any appreciation in the property's value has been realized. *Id.* at 1321. This is significantly different from Georgia law, which uses language adapted from the federal exemptions at 11 U.S.C.

§ 522(d). Under Georgia law, the exemption applies to the "debtor's aggregate interest" in property, O.C.G.A. § 44–13–100(a), and the property may appreciate in value after the debtor has become entitled to the exemption.

6. The *Sherbahn* case illustrates the importance of analyzing an exemption claim as of the time of the bankruptcy filing. As of that date, the debtor has a right to either ownership of the entire property (including future appreciation) subject to prepetition liens and encumbrances or to proceeds from the later liquidation of the property in a sum certain with remaining proceeds (including appreciation) to be received by the estate.

asset. *Id.* at 416. Rather, "[t]he facts suggest that Ms. Wick, her counsel, and the trustee understood that the options were only partially exempt." *Id.* The court stated: "Here, when a specific dollar figure given by statute limited the amount of the exemption, and the trustee did not forsake an interest in the options, either through inadvertence or misjudgment, listing 'unknown' does not, by itself, render the options fully exempt." *Id.* Instead, the debtor was entitled only to the statutory exemption amount of $3,925,[7] and all appreciation belonged to the estate. *Id.* at 416–17.

The court in *Wick* distinguished *Taylor* on the basis that the property in *Wick* was not exempted in full. *Id.* at 417.

> We do not think that the Bankruptcy Code and Rules oblige a trustee to object every time a debtor partially exempts an asset in order to preserve the estate's interest. Since exemptions are routinely smaller than the assets they are designed to protect (for example, with homes), objections would multiply greatly if *Taylor* were read so broadly.

*Id.* Although the debtor in *Wick* used the same ambiguous language that the debtor in *Taylor* used to describe her exemption, the Eighth Circuit looked behind that language to gauge the debtor's intent.

■ So, while *Taylor* prevents a court from ruling on the validity of an exemption after the time to object has passed, both *Sherbahn* and *Wick* suggest that the court can still interpret the *scope* of a claimed exemption—whether it was fully or partially exempted—and may do so by inquiring beyond the schedules to the intent of the parties. However, this Court disagrees with the further premise advanced by *Sherbahn* and *Wick* that an ambiguity

should be resolved against the debtor. *Taylor* seems to compel the contrary result.

Cases from the Seventh and Eleventh Circuit Courts demonstrate how a debtor can successfully exempt an entire asset and, consequently, claim any appreciation. In *Polis v. Getaways, Inc. (In re Polis)*, 217 F.3d 899 (7th Cir.2000), the debtor listed a consumer protection cause of action among her assets and valued it at $0. She sought to exempt the asset in full. *Id.* at 901. The court determined that the debtor could exempt the entire lawsuit but only if its value was less than the amount available for an exemption claim: $900. *Id.* The court found that the debtor was not claiming the actual value to be $0, because that would make it a frivolous lawsuit. *Id.* at 901. But, after reviewing the record, the court "found no evidence from which a trier of fact could rationally infer that [the debtor's] claim was worth more than $900 on the day she filed for bankruptcy." *Id.* at 904. Thus, she was entitled to exempt the entire lawsuit. *Id.* Nevertheless, the court acknowledged that if the debtor can exempt the property in full, she might receive a windfall because property values fluctuate. *Id.* at 902. With respect to lawsuits, "[i]t might when it first accrued have seemed so 'far out' that its fair market value would be well within the limits of the exemption, and yet—such are the uncertainties of litigation—it might turn into a huge winner." *Id.* at 902–03. This possibility is not a "loophole" in the Bankruptcy Code, the court explained. *Id.* at 903.

> If the assets sought to be exempted by the debtor were not valued at a date early in the bankruptcy proceeding, neither the debtor nor the creditors would know who had the right to them. So

---

7. The debtor was also allowed to keep a portion of the stock option proceeds that was

attributable to her post-petition services. 276 F.3d at 417.

long as the property did not appreciate beyond the limit of the exemption, the property would be the debtor's; if it did appreciate beyond that point, the appreciation would belong to the creditors, who thus might—if they still remembered their contingent claim to the property—reclaim it many years after the bankruptcy proceeding had ended. The framers of the Bankruptcy Code could have made ineligible for exemption property that has an unusual propensity to fluctuate in value, thus reserving windfall gains to the creditors; but they did not do so, perhaps because of the difficulty of defining the category or allocating its fruits across creditors. An alternative would be to keep the bankruptcy proceeding open indefinitely; the objections are self-evident.

*Id.* It is unclear whether the Seventh Circuit would let a value of "unknown" rather than $0 stand unchallenged as the Supreme Court did in *Taylor.*

In *Allen v. Green (In re Green)*, 31 F.3d 1098 (11th Cir.1994), the asset was also a lawsuit of uncertain value. In that case, the debtor valued the lawsuit at $1 and claimed an exemption of $1. The trustee did not object. *Id.* at 1098–99. The court found that both the trustee and the debtor understood the $1 figure to represent a contingent value. *Id.* at 1100. It then concluded that the debtor had exempted the entire property because "although she exempted only one dollar of the lawsuit, that was its entire reported value. Because the Trustee failed to challenge her valuation or exemption in a timely manner, ... [the debtor] is entitled to the entire value of the lawsuit...." *Id.* at 1099.

The court noted that "an unstated premise of the [Supreme] Court's holding [in *Taylor*] was that a debtor who exempts the entire reported value of an asset is claiming the 'full amount,' whatever it

turns out to be." *Id.* at 1100. Under *Green,* when a debtor values an asset at a nominal amount and claims an exemption in the asset for that same nominal amount, in the absence of a timely objection to the exemption, the debtor is entitled to exempt the entire asset and retain the benefit of any appreciation in its value. Thus, like *Sherbahn* and *Wick,* the results in *Polis* and *Green* depend on the court's interpretation of the scope of the claimed exemption. Those cases demonstrate that the scope will be somewhat informed by the debtor's intention in claiming the exemption. For example, in the case of a homestead exemption, a debtor who resides on the property and maintains the property shows by his actions his intent to remain on the property. If he intends to remain on the property, it follows that he intends to exempt the property in full, as that is the most expedient way to prevent liquidation by the trustee. The trustee can always scuttle the debtor's plan by making a timely objection to the exemption and forcing the debtor to expressly limit his exemption to the dollar amount allowed by statute.

█ When deciding whether to bring an objection, the Trustee should be aware that the absence of market value, does not necessary mean a property is worthless. Debtors routinely claim exemptions in property with no market value because of the personal value of the property to the debtor, such as the right to occupy it. In some such cases, the equity is swallowed by liens plus the exemption. In other cases, the debtor claims a nominal exemption because the property is fully encumbered by liens. In either situation, the debtor argues that because of the lack of equity, and resulting lack of benefit to the estate, his exemption claim serves to exempt the entire property rather than just the dollar amount claimed. Although this

Court agrees with the argument, at least two other courts have rejected it.

In *Bregni,* the debtor jointly owned a condominium with her former husband, who had filed a separate bankruptcy petition. The property was valued at $120,000, it was encumbered by a $90,000 mortgage, and each debtor claimed a $15,000 exemption. The debtor argued that because the liens and exemptions wiped out all equity, the entire property was exempt. 215 B.R. at 851. The court rejected that argument, stating that it " 'render[ed] meaningless the value limitations contained in the [exemption] statute. Thus, the language of the statute itself supports the conclusion that the scope of the debtor's exemption is not necessarily coextensive with the full value of the property in question.' " *Id.* at 852 (quoting *In re Gaylor,* 123 B.R. 236, 238 (Bankr. E.D.Mich.1991)). *See also Einkorn,* 330 B.R. at 572 (relying on *Bregni* to hold that the debtor's exemption of $1 in a fully encumbered timeshare did not exempt the entire property).

■■■ This Court disagrees with *Bregni* and *Einkorn.* If a debtor has claimed an exemption in all the value that is available, it follows that he has exempted the property in full. On the other hand, when it is clear that the debtor is claiming less than the entire value to the estate as of the date of the bankruptcy filing, his exemption must be limited to the amount claimed. For example, if the debtor values certain real estate at $50,000, indicates that it is free of encumbrances, and claims an exemption of $5,000, then the debtor will be limited to the dollar amount claimed, and any net proceeds including appreciation will benefit the bankruptcy estate.

Of necessity, exemption cases focus on the liquidation value of the property. Typically, the trustee identifies property of the estate that can be transformed through liquidation into a dividend for creditors. Property incapable of such a transformation is of no interest to the trustee. For this reason, property of great sentimental value to a debtor can be worthless to the trustee. Likewise, property that may require substantial capital investment to realize its value may be worthless to the trustee because the business of property development is beyond the scope of a Chapter 7 trustee's duties. If such a property cannot be sold at some price to persons who would be interested in undertaking such development, it will be abandoned from the estate. Opportunities for speculative investment abound in the open market. When such an investment is profitable, the value is more likely to be attributable to the investment risk of additional capital expenditures rather than the ownership of the initial property interest. Thus, it happens that the significance of a property's value may only be enjoyed by persons willing to take the risks necessary to realize the future potential of the property.

This aspect of property ownership is more commonly evidenced in cases in which a debtor chooses to exempt a home where the value is worth less than the mortgage. To the trustee in bankruptcy, this is a property that cannot be immediately transformed by liquidation into a dividend to creditors. In order to realize value from such a property, the mortgage must be paid and the property must be maintained for a time sufficient to permit market forces to increase the value of the property and for payments to decrease the mortgage indebtedness. Such an undertaking, while often financially beneficial, is not without its financial pitfalls. There is no guarantee that an investment in the leasing, maintenance, supervision, and debt servicing on such property will pro-

duce a return sufficient to encourage a trustee to undertake such an effort. On the other hand, a debtor who might occupy the property as a principal residence would enjoy a unique incentive to service the mortgage and maintain the property that would be alien to a liquidating trustee. Thus, it regularly happens that properties with no equity are exempted by debtors and in later years prove to be fruitful financial undertakings to such debtors. Such investments in home ownership are encouraged by financial advisors as essential components of any personal financial plan. It is unthinkable to opine that bankruptcy law permits a liquidating trustee to wait, allow the debtor to undertake the necessary maintenance and mortgage repayment, and then step in years later when the debtor's investment becomes profitable, claim the rewards. Such a result is not unlike the trustee's position in this case. It fails to take into account that a debtor's willingness to engage in such equity-building actions is demonstrative of his intent to exempt the property in full and dependent upon his ability to do so, thus leading the Court back to the question at issue in this case.

The determinative fact in all the cases cited here is whether or not the debtor exempted the property in full. Those courts that found the debtor exempted the entire property, such as *Taylor, Polis,* and *Green,* held that appreciation in the property's value inures to the benefit of the debtor. Those courts that found the debtor exempted only a portion of the value of the property, such as *Wick, Sherbahn,* and

*Einkorn,* held that appreciation in the property's value goes to the estate.

After considering the case law—with emphasis on *Taylor* and *Green*—the Court concludes as follows:

■■ (1) If the debtor's intent to exempt the property in full is clear, then that intent will control in the absence of an objection. Claiming an exemption amount sufficient to exempt all the available (i.e., unencumbered) value in a property should be deemed to indicate the debtor's intent to exempt the property in full. This can be reinforced by the debtor's actions, for example, by continuing in possession and actively maintaining the property.

■ (2) If the debtor's intent is unclear, the burden is on the trustee to object to ensure that the debtor's exemption is limited to the amount allowed by statute. Failure to timely object will leave the trustee without recourse if the court later determines that the debtor intended to exempt the property in full, even if such a ruling results in an exemption greater than the statutory limits.

■ (3) If the debtor has exempted an asset in full, he is entitled to the benefit of any appreciation in the value of that asset and must suffer the loss if its value depreciates.[8]

In this case, Debtor valued the 401 acres at $501,250, listed secured claims against the property in the amount of $555,092, and claimed an exemption of $1,000. Standing alone, those numbers demonstrate Debtor's intent to exempt the

8. Any attempt by a debtor to modify his schedules to take advantage of post-petition depreciation likely would be ineffective. The property's value is considered on the date of the filing and would not alter the debtor's entitlement to a post-petition fluctuation. *See*

*Polis,* 217 F.3d at 903 ("If the assets sought to be exempted by the debtor were not valued at a date early in the bankruptcy proceeding, neither the debtor nor the creditors would know who had the right to them.").

entire property, because he is claiming an exemption in all the value available. However, Debtor's case is bolstered by the addendum to his exemption.[9] He expressly stated that by claiming an exemption of $1,000, he sought to exempt everything available to him under the law. The law as set forth in *Taylor* allows a debtor to exempt a property in its entirety, even if its value exceeds the amount specified in the exemption statute in the absence of an objection by the trustee. Debtor's addendum further stated that his use of the $1,000 figure was merely to comply with the Court's order that his claimed exemptions conform with the dollar amounts stated in the Georgia exemptions. By detailing his intentions, Debtor's $1,000 exemption serves to exempt the entire property, even though its value may later be greater than the total exemption allowed under Georgia law. The Trustee had an opportunity to object to the exemption and the addendum and failed to do so. He cannot now ask the Court to limit the long-term value of the exemption.

For the foregoing reasons, the Court finds that Debtor exempted his entire interest in the property as of the date of filing, an undivided half interest in 401 acres. He therefore is entitled to any later proceeds resulting from the sale of his interest in the property after all liens and costs of sale have been satisfied.

An Order in accordance with this Opinion will be entered on this date.

### ORDER

In accordance with the Memorandum Opinion entered on this date, the Court

hereby GRANTS the motion of Debtor Jerry E. Jones for summary judgment.

So ORDERED.

---

9. A debtor is not limited by the constraints of the official forms. Fed. R. Bankr.P. 9009. He may, as this case demonstrates, file sup-

plemental documentation to provide additional information or explanation.